McKinney, J.
delivered the opinion of the court.
The plaintiff in error was convicted in the circuit court, of Lauderdale, of the murder of Benjamin Huck-aby, a free white man: sentence of death was pronounced upon him, from which he appealed- in error to this court.
The bill of exceptions shows, that in empanelling a jury to try the prisoner, a panel of eighty-one jurors was exhausted, out of which only five jurors were chosen; and thirty-six other jurors were summoned, of whom the remaining seven were selected; but the prisoner exhausted his peremptory challenges before the jury was made up.
One of the jurors, upon being sworn and examined, stated that, from rumor he had formed an opinion, touching the accusation against the prisoner, upon which he was called to pass. “The court then asked him, if his information was from any of the witnesses, or persons *457 who knew the facts? He said he did not know, or even know the witnesses in the cause. He was further asked, if he could do justice to the prisoner, or if his mind was any wise biased? The answer was, if the proof turned out differently from rumor, he could do justice to the prisoner. Whereupon the court pronounced him a competent juror,” and he was put to the prisoner. To this the prisoner excepted; and the question for our determination is, did the court err in putting said juror to the prisoner, as a competent juror free from legal exceptions?
In the present state of our law, in respect to trials in criminal cases, difficulties of a most perplexing and delicate nature not unfrequently arise in the selection of jurors. The trial is required to be had in the county in which the offence may have been committed. In one event only, can a change of venue take place; where, upon the attempt being made to empanel a jury, if it shall be found impracticable to do- so, the court may, with the assent of the prisoner, order the venue to be changed. The practical result is, that, in regard to offences of the higher grades especially, it is often found impossible to select a jury altogether unaffected by rumor touching the case upon which they are called to pass. From these considerations it is obvious, that, without a stern and vigilant watch on the part of the courts, there is imminent danger that the constitutional right of “a speedy public trial, by an impartial jury,” may be gradually infringed until it shall be rendered valueless.
The rules heretofore laid down by this court in various cases, for testing the competency of jurors, saves us the labor at present of doing more than simply to determine whether the case under consideration falls within the *458 principles of either of those rules; and, if not, to establish an additional rule to govern this and similar eases in future. And in reference to the rules previously established, it may not be improper to remark, that while on the one hand they are adapted as nearly as practicable to the circumstances of our community, and the policy of our existing law, they do not, on the other, invade, nor are they at all incompatible with, the right of trial by an impartial jury, if properly understood.
The rules laid down in the cases referred to, establish these principles, among others. First: That if a juror has formed an opinion, that is, “has made up his mind,” as to the guilt or innocence of the accused, either from personal knowledge of the facts, or upon information derived immediately from witnesses, or others professing to know the circumstances of the case, he is incompetent and ought to be rejected by the court.
Second. But an opinion formed, not upon either of the foregoing grounds, but upon mere rumor or report, not relied upon as true, will not disqualify the juror.
The mere statement of a juror that he has formed an opinion, is not of itself sufficient to disqualify him. An obvious and intelligible distinction is recognized between what is to be regarded as a positive, deliberate opinion, formed upon a rational ground of belief; and a mere hypothetical opinion, or vague impression, having no reasonable foundation to rest upon.
In the former case the juror will not be admitted, because the law supposes that his judgment may be improperly influenced, perhaps unconsciously, by the opinion which pre-occupies his mind; and that he is incapable of hearing and weighing the evidence with that perfect fairness and impartiality which might reasonably be *459 expected from one who enters the jury box with no preconceived fixed opinion.
But, in the latter case, there is no previous fixed opinion, requiring the force of countervailing evidence to displace; and there is no sufficient reason to distrust the capability of the juror to do impartial justice to the accused.
The case under consideration does not fall precisely within the principle of either of the foregoing rules. Although the statement of the juror, on his examination, is not very perspicuous or intelligible, we understand it to mean, that he had in his mind, not a mere hypothetical opinion, or loose impression; but an opinion so fixed that it would require evidence to remove it, and which was not to be changed or yielded, unless, in his own language, “the proof turned out differently from rumor.” But the source whence that opinion had been derived, whether immediately from persons having knowledge of the facts, or from rumor merely, he was unable to state.
It need scarcely be remarked, that in testing the fitness or competency of a juror, the character of the impression made upon his mind, and the influence upon his conduct likely to be produced by it, are of much greater consequence than the source whence such impression may have been derived. And in this view, the distinction between the present case, and a case falling within the first rule before stated, is not very broadly marked. In each case, the juror has made up his mind; their opinions are alike established; both have formed their opinions upon information received from others; but in the one case, the juror is able to state distinctly that his informa *460 tion was received from an eye witness to the transaction, or other person professing to know the circumstances of the case; in the other, the juror does not remember, and therefore cannot state, whether his information ■¡was derived from the same source, or from report or rumor.
This constitutes the only difference; and, in principle, the cases seem scarcely distinguishable. All the evils and hindrances to a fair and impartial trial that would result from the admission of the juror in the one case, might reasonably be expected to result, in no less degree, from his admission in the other.
It is not necessary, however, that the present case should be referred to the class embraced by the terms of the rule alluded to, as we think it more properly falls within a safe practical rule, not heretofore authoritatively established, but incidentally stated in the case of Henry vs. The State, (4 Hum. 270,) na'mely, that if, from the examination of the juror, it be doubtful whether he has formed such opinion as would render him unfit to be a juror, he ought to be rejected.
The competency of the juror should not be questionable. It should appear that he stands indifferent, and above all legal exception. The accused has the right to demand this; and it is essential to the just, impartial and efficient administration of the law; and perhaps but little less indispensible to the safety of the innocent, than to the punishment of the guilty:
The result of our opinion is, that the juror in question was not indifferent; and, therefore, was liable to challenge for cause. And as the record shows that the prisoner exhausted his peremptory challenges, before the jury was made up, we hold that the putting said juror *461 to the prisoner for his acceptance or challenge, was error for which the judgment must be reversed.
The other grounds assigned for error are untenable. Judgment reversed.